# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

KRISTIN MYERS,                          )
                                        )
      Petitioner,                    )
                                        )
v.                                      )    No.:  3:22-CV-29-KAC-DCP
                                        )
GLORIA FISHER,                          )
                                        )
      Respondent.                    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Kristin Myers, an inmate serving a life sentence in the custody of the Tennessee Department of Correction, filed a pro se federal habeas action under 28 U.S.C. § 2254 challenging the sentence imposed for her 2011 state conviction for first-degree premeditated murder [Doc. 2 (the "Petition")].  Having considered the submissions of the Parties, the State court record, and the law applicable to Petitioner's claims, the Court concludes that the Petition should be denied.

## I.    FACTUAL BACKGROUND

On December 22, 2009, Petitioner and her then-husband, Larry Myers (the "Victim"), went to Calhoun's restaurant where, between the two of them, they consumed sixteen (16) pints of beer [Doc. 15-2 at 53 (Trial Transcript, Vol. I at 49); Doc. 15-3 at 33, 37-38 (Trial Transcript, Vol. II at 18, 122-23)].  The Victim consumed most of the alcohol, and the waitress eventually refused to serve Petitioner and the Victim any more alcohol after they started arguing and the Victim "started getting loud" [Doc. 15-2 at 53 (Trial Transcript, Vol. I at 49); Doc. 15-3 at 38 (Trial Transcript, Vol. II at 123)].  They finished their meal and left [Doc. 15-2 at 53 (Trial Transcript, Vol. I at 49)].  The Victim and Petitioner talked on the drive home [*Id*. (Trial Transcript, Vol. I)].  The Victim was initially upset about being cut off by the waitress, but then began inquiring about the Petitioner's ex [*Id*. (Trial Transcript, Vol. I)].  By the time they arrived home, Petitioner believed

the Victim was asleep and was startled when he spoke as Petitioner pulled into the driveway [*Id.* (Trial Transcript, Vol. I)]. They both laughed and went inside the house [*Id.* at 53-54 (Trial Transcript, Vol. I at 49-50)].

As Petitioner and the Victim were getting into bed, the Victim began talking about another woman that Petitioner did not like, and Petitioner became angry [*Id.* at 54 (Trial Transcript, Vol. I at 50)]. An argument ensued, and Petitioner left the house to go for a drive at approximately 8:30 p.m. [*Id.* (Trial Transcript, Vol. I)]. While Petitioner was away, Petitioner and the Victim exchanged a series of text messages in which they continued to argue [*Id.* (Trial Transcript, Vol. I); Doc. 15-5 at 36-37 (Trial Exhibit 8—Printout of Text Messages ("Text Messages"))]. Specifically, in the messages, the Victim threatened to leave, and Petitioner commented on two women with whom the Victim allegedly had sexual relations [Doc. 15-5 p. 36-37 (Text Messages)]. In one message, Petitioner asked the Victim whether he had "[e]ver heard of a drive by" and stated, "I just wish I had a sniper rifle" [*Id.* at 37 (Text Messages)]. The Victim continued to threaten to leave and stated that he had called law enforcement [*Id.* (Text Messages)].

After driving around for approximately fifteen (15) to twenty (20) minutes, Petitioner returned home and went inside [Doc. 15-2 at 54 (Trial Transcript, Vol. I at 50)]. The Victim began arguing with Petitioner again, so Petitioner went back out to her truck [*Id.* (Trial Transcript, Vol. I)]. Realizing that she left her lighter inside, Petitioner went back inside the house to retrieve it [*Id.* (Trial Transcript, Vol. I)]. The Victim was putting his clothes into trash bags [*Id.* (Trial Transcript, Vol. I)]. When Petitioner went back out to her truck to leave the house, the Victim followed her outside [*Id.* (Trial Transcript, Vol. I)]. Petitioner saw the Victim coming towards her truck and locked the doors [*Id.* (Trial Transcript, Vol. I)]. The Victim held his fist in a ball and drew it back like he was going to punch the window [*Id.* (Trial Transcript, Vol. I)]. Petitioner

rolled her window down approximately three inches and told the Victim he "better not bust [her] window" [*Id*. (Trial Transcript, Vol. I)]  The Victim attempted to reach inside the opening in the window [*Id*. (Trial Transcript, Vol. I)].  Petitioner responded by grabbing a gun from the console of her truck [*Id*. at 53-54 (Trial Transcript, Vol. I at 50-51)].  When the Victim saw the gun, he turned to leave, and Petitioner shot him in the back [Doc. 15-2 at 55, 78 (Trial Transcript, Vol. I at 51, 74)].  Petitioner saw the Victim kneeling over when she pulled out of the driveway of the home [*Id*. at 55 (Trial Transcript, Vol. I at 51)].

The next morning, a neighbor saw the Victim's body in the front yard and called police [Doc. 15-2 at 7 (Trial Transcript, Vol. I at 3)].  The Victim was deceased [*Id*. at 19 (Trial Transcript, Vol. I at 15)].  During the police investigation, Detective Mike Newman attempted to contact Petitioner by phone and left her a voicemail [Doc. 15-3 at 17 (Trial Transcript, Vol. II at 102)].  Petitioner called back about an hour later and told police she was at the Econo Lodge in Lenoir City, Tennessee [*Id*. (Trial Transcript, Vol. II)].  When police arrived at the Econo Lodge, the uniformed officers asked for permission to enter Petitioner's room [Doc. 15-2 at 41 (Trial Transcript, Vol. I at 37)].  Petitioner agreed and allowed the two officers, including Officer Vittatoe of the Loudon County Police Department, inside [*Id*. (Trial Transcript, Vol. I)].  Officer Vittatoe described his encounter with Petitioner as "easy" and stated that Petitioner appeared coherent and "very calm" [*Id*. at 41, 47-48 (Trial Transcript, Vol. I at 37, 43-44)].  Although no arrest was made at the time, Officer Vittatoe read Petitioner her *Miranda* rights [*Id*. at 44 (Trial Transcript, Vol. I at 40)].  Petitioner expressed that she understood her rights and agreed to continue her conversation with officers [*Id*. (Trial Transcript, Vol. I)].  After the verbal interview concluded, Petitioner wrote a detailed recollection of the events of the previous night leading up to the Victim's shooting [*Id*. at 47 (Trial Transcript, Vol. I at 43)]. The statement outlined the couple's turbulent—and

sometimes violent—history [*Id*. at 47, 50-56 (Trial Transcript, Vol. I at 43, 46-52)]. Petitioner did not learn that the Victim had died until the interview was concluded [*Id*. at 66 (Trial Transcript, Vol. I at 62)]. In his report, Officer Vittatoe noted that Petitioner never asked about the Victim's condition during the interview [*Id*. at 68-69 (Trial Transcript, Vol. I at 64-65)].

Petitioner then agreed to accompany Officer Vittatoe to the police station for further questioning, where she admitted to shooting the Victim sometime between 8:30 p.m. and 9:00 p.m. [Doc. 15-2 at 54-55, 57 (Trial Transcript, Vol. I at 50-51, 53); Doc. 18 (Trial Exhibit 9—CD of Interrogation Room with Kristen Myers ("Interrogation Video"))[2]]. Petitioner claimed that she did not call the police after shooting the Victim because his text messages at the time stated that he had already called law enforcement [*See* Doc. 18 (Interrogation Video)]. Petitioner further explained that she did not know if the bullet she shot actually struck the Victim [*Id*. (Interrogation Video)].

At trial, the medical examiner testified that the cause of death was "an undetermined range, perforating gunshot wound to the chest" [Doc. 15-2 at 87 (Trial Transcript, Vol. I at 83)]. The medical examiner deduced that the Victim did not die immediately [*Id*. at 83 (Trial Transcript, Vol. I at 79)]. Rather, the Victim bled for around twenty (20) minutes before he died, and the medical examiner opined that the Victim likely could have survived the gunshot wound if he had received appropriate medical attention [*Id*. (Trial Transcript, Vol. I)].

## II. PROCEDURAL HISTORY

Following a one-day (1-day) trial, a jury convicted Petitioner of first-degree premeditated murder and she was sentenced to life imprisonment [Doc. 15-3 at 44 (Trial Transcript, Vol. II

---

[2] The Court cites Respondent's "Notice of Manual Filing" to indicate reference to this exhibit, which is on file with the Court [*See* Doc. 18].

4

at 129)].  On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgment.  *See State v. Myers*, No. E2012-00494-CCA-R3-CD, 2013 WL 1094981, at *1 (Tenn. Crim. App. Mar. 18, 2013), *perm. app. denied* (Tenn. July 10, 2013) ("*Myers I*").  The Tennessee Supreme Court denied Petitioner's subsequent application for permission to appeal [Doc. 15-15 (Order of the Tennessee Supreme Court)].

### A.  Petition for Post-Conviction Relief

On May 21, 2014, Petitioner filed a pro se petition for post-conviction relief in the trial court that was later amended by appointed counsel [Doc. 15-16 (Tennessee Court of Criminal Appeals Technical Record, Vol. I ("TCCA Technical Record, Vol. I")) at 5-15 (Petition for Post-Conviction Relief), 79-81 (Motion to Amend Petition for Post-Conviction Relief)].  In her petition, Petitioner raised the following grounds for relief: (1) "evidence [was] insufficient to convict the Petitioner of first-degree murder;" (2) "counsel was ineffective for not requesting a change of venue;" and (3) "counsel was ineffective for failure to protect the Petitioner's rights during the plea bargain stage" [*Id.* (TCCA Technical Record, Vol. I)].

The court held an evidentiary hearing on the post-conviction petition.  At the hearing, trial counsel testified that he was appointed to represent Petitioner on her first-degree murder charge [Doc. 15-18 at 38-39 (Post-Conviction Petition Hearing Transcript at 35-36)].  Trial counsel stated that during their initial meeting, he apprised Petitioner of the nature and potential consequences of her charges, including the ranges of sentences for first-degree murder [*Id.* at 40 (Post-Conviction Petition Hearing Transcript at 37)].

The State initially extended an offer for Petitioner to plead to second-degree murder and serve twenty (20) years' imprisonment at one hundred percent (100%) service [*Id.* at 10, 47 (Post-Conviction Petition Hearing Transcript at 7, 44)].  Trial counsel told Petitioner to think about

the offer but did not advise her whether to accept it [*Id.* at 47-48 (Post-Conviction Petition Hearing Transcript at 44-45)]. Petitioner decided not to accept the offer [*Id.* at 49 (Post-Conviction Petition Hearing Transcript at 46)].

The State extended a second plea offer came while trial counsel was out of town; trial counsel sent an associate from his firm to inform Petitioner of the offer [*Id.* at 49-50 (Post-Conviction Petition Hearing Transcript at 46-47)]. This offer provided that Petitioner would plead to second-degree murder and offered a sentence of fifteen (15) years' incarceration at sixty-five percent (65%) service [*Id.* (Post-Conviction Petition Hearing Transcript)]. Trial counsel encouraged Petitioner "to strongly consider taking this offer" [*Id.* at 50 (Post-Conviction Petition Hearing Transcript at 47)]. Petitioner accepted the offer and signed an agreement handwritten on site by Petitioner's associate counsel [*Id.* at 12-13 (Post-Conviction Petition Hearing Transcript at 9-10)]. However, due to the Victim's family protesting the terms of the plea agreement, the prosecution withdrew the offer almost simultaneous to Petitioner's acceptance [*Id.* at 50 (Post-Conviction Petition Hearing Transcript at 47)]. In her post-conviction petition, Petitioner alleged that the withdrawal of the plea agreement violated contract law principles but did not present an ineffective assistance of counsel claim on this ground [*See* Doc. 15-18 at 7-8, 68-69 (Post-Conviction Petition Hearing Transcript at 4-5, 65-66)].

Petitioner also alleged that trial counsel talked about a third plea agreement whereby Petitioner would be sentenced to twenty (20) years' imprisonment at eighty-five percent (85%) service for second-degree murder [*Id.* at 14 (Post-Conviction Petition Hearing Transcript at 11)]. Petitioner asserted that counsel was ineffective because he advised her not to accept this third plea offer [Doc. 15-16 at 10 (TCCA Technical Record, Vol. I)]. But trial counsel had no recollection of a third plea offer [*Id.* at 64 (Post-Conviction Petition Hearing Transcript at 61)]. And both trial

6

counsel and the District Attorney informed the post-conviction trial court that there was no documentation of a third plea offer ever being made [*Id.*].

Further, Petitioner claimed that trial counsel told her "that, even if they convicted [her] of second-degree murder, they couldn't give [her] any more time" than twenty (20) years [*Id.* (Post-Conviction Petition Hearing Transcript)]. Petitioner claimed trial counsel misled her regarding the potential punishment for her charge and that—based on trial counsel's representations—she thought that the evidence was insufficient to sustain a conviction for first-degree murder [*Id.* at 14-15 (Post-Conviction Petition Hearing Transcript at 11-12)]. Petitioner further alleged that if she had known the weight of her charge, she would have accepted the alleged third plea offer [*Id.* at 15 (Post-Conviction Petition Hearing Transcript at 12)].

The post-conviction court denied the requested relief following the evidentiary hearing [*See* Doc. 15-17 at 78-79 (Tennessee Court of Criminal Appeals Technical Record, Vol. II ("TCCA Technical Record, Vol. II") (Order Denying Post-Conviction Relief))]. The court found that Petitioner had waived her claim that the revoked second plea offer violated contract law principles by failing to raise the issue at trial or on direct appeal [*Id.* at 95 (TCCA Technical Record, Vol. II (Order of the Criminal Court of Loudon County, Tennessee at 18))]. Further, the court found that Petitioner's testimony regarding the plea offers was not credible, and instead credited the testimony of trial counsel that Petitioner lacked interest in accepting the twenty-year (20-year) plea offer [*See* Doc. 15-17 at 90 (TCCA Technical Record, Vol. II)]. The court found that (1) Petitioner's case was "a classic case of 'buyer's remorse' where the petitioner realizes she should have taken the plea offer to serve twenty (20) years but instead chose to go to trial and is now serving a life sentence," and (2) she had not carried her burden of demonstrating that counsel performed ineffectively [*Id.* (TCCA Technical Record, Vol. II)].

7

### B. Post-Conviction Appeal to the TCCA and Tennessee Supreme Court

Petitioner appealed to the TCCA, arguing that trial counsel rendered ineffective assistance in failing to protect the plea agreement under contract law [Doc. 15-26 at 16-19 (Tennessee Court of Criminal Appeals Brief of Appellant ("TCCA Brief of Appellant")]. The TCCA concluded that Petitioner waived this claim by failing to raise it before the trial court. *See Myers v. State*, No. E2020-01401-CCA-R3-PC, 2021 WL 2395962, at *2 (Tenn. Crim. App. May 26, 2021), *perm. app. denied* (Tenn. Oct. 13, 2021) ("*Myers II*").[3] And Petitioner did not carry forward her allegations related to change of venue or first-degree murder sentencing exposure [*See id.*]. The Tennessee Supreme Court denied Petitioner's application for permission to appeal [Doc. 15-36 (Order Denying Permission to Appeal)].

### C. Federal Habeas Petition

On January 27, 2022, this Court received Petitioner's Petition for writ of habeas corpus under 28 U.S.C. § 2254, in which she raised as grounds for relief: (1) counsel's alleged failure to protect Petitioner's rights during plea negotiations by failing to enforce the favorable plea deal; (2) counsel's failure to protect Petitioner's rights during plea negotiations by advising Petitioner not to take the alleged third plea deal; (3) counsel's ineffective failure to request a change of venue; (4) counsel's ineffective failure to provide accurate sentencing information; and (5) judicial misconduct [*See* Doc. 2]. The Court ordered Respondent to file a response to the Petition and the State-court record [*See* Doc. 10]. Respondent subsequently filed the State-court record, [Docs. 15;

---

[3] Specifically, the Court noted that "[a]lthough post-conviction counsel discussed the plea offer in relation to contract law during the evidentiary hearing, it was not in the context of ineffective assistance of counsel, rather the petitioner raised it as a stand-alone claim under the theory that contract law applied." *Id.*

8

20], and an answer, [Doc. 19]. Petitioner did not file a reply or seek an extension, and the time to do so has passed [*See* Doc. 10]. Therefore, this matter is ripe for review.

## III.    LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the Court from granting federal habeas relief on any claim adjudicated on the merits in a State court unless that state adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; "or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & (2); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits her federal habeas claim). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted). A federal habeas claim is procedurally defaulted if:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 927 n.11 (6th Cir. 2010)).

A federal district court generally cannot consider a Section 2254 petition unless the Petitioner has first exhausted all available State court remedies for each claim in her petition. 28

U.S.C. § 2254(b)(1); *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022). This requirement is satisfied when the petitioner "rais[es] his federal claim before the state courts in accordance with state procedures." *Shinn*, 142 S. Ct. at 1732 (citing *O'Sullivan*, 526 U.S. at 848); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if [s]he has the right under the law of the State to raise, by any available procedure, the question presented."). "[I]n order to satisfy fully the exhaustion requirement," "a petitioner must have 'fairly presented' to the state courts 'the substance of her federal habeas corpus claim.'" *McClain v. Kelly*, 631 F. App'x 422, 428 (6th Cir. 2015) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)) (alteration in original). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Id.* at 439 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted)). Instead, the "doctrine of exhaustion requires that the same claim under the same theory be presented to [the] state courts before raising it in a habeas petition." *Allen v. Parris*, 795 F. App'x 946, 954 (6th Cir. 2019) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)) (alteration in original); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (concluding that constitutional claim must be presented in federal court under the same theory as presented in the state appellate process). In Tennessee, presentation of a federal claim to the TCCA satisfies the exhaustion requirement. *See Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing that presentation of claim to TCCA is sufficient to exhaust State remedies).

Further, a claim may be technically exhausted due to the expiration of potential remedies but still barred by procedural default. Tennessee's one-year statute of limitations and "one petition" rule on post-conviction petitions generally prevent a return to State court to litigate any additional constitutional claims. *See* Tenn. Code Ann. §§ 40-30-102(a) (one-year limitation

period), 40-30-102(c) ("one petition" rule); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (noting Tennessee petitioner "no longer has any state court remedies to exhaust" when he failed to present claim in initial post-conviction petition). Accordingly, where a Tennessee habeas petitioner fails to fairly present her federal claim to the State courts prior to filing her federal habeas petition, there is generally no longer a State remedy to exhaust. In such cases, the claim is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.").

The Court may excuse a procedural default, thereby allowing federal habeas review of the claim, only where the petitioner can show "cause" and "actual prejudice" excusing the default, or that a failure to address the merits of the claim would result in a "fundamental miscarriage of justice." *See Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020). "Cause" is established where a petitioner shows "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rules," or that her trial counsel rendered ineffective assistance. *See Theriot*, 982 F.3d at 1004; *Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023). The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Shinn*, 142 S. Ct. at 1727; *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (petitioner bears "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to h[er] *actual* and substantial disadvantage, infecting h[er] entire [proceeding] with error of constitutional dimension") (emphasis in original).

A "fundamental miscarriage of justice" occurs when "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and the petitioner can establish that no reasonable factfinder "would have found [her] guilty of the

11

underlying offense" by "clear and convincing evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 396 (2013) (quotations and citations omitted). The fundamental miscarriage of justice exception to the procedural default rule "has been applied only when a habeas petitioner has demonstrated that [s]he is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 532 (6th Cir. 2013). "For a claim of actual innocence to be credible, a [petitioner] must 'support [her] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Searcy v. Berghuis*, 549 F. App'x 357, 363 (6th Cir. 2013) (emphasis omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

The standard for assessing whether an attorney has rendered ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, a habeas petitioner must show that (1) her trial "counsel's representation fell below an objective standard of reasonableness," and (2) there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. And the Court "must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." *See Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (citation omitted).

12

Here, Petitioner claims that trial counsel rendered ineffective assistance of counsel by failing to (1) protect her rights during plea negotiations; (2) protect her rights related to the request for a change of venue; and (3) provide accurate sentencing information [*See* Doc. 2 at 4-7]. As set forth more fully below, each of Petitioner's federal habeas claims of ineffective assistance of counsel are procedurally defaulted. Petitioner has not presented any argument to excuse these defaults. And Petitioner may not rely on the miscarriage of justice exception in this case due to the overwhelming evidence of Petitioner's guilt presented at trial. Specifically, the Court notes that Petitioner admitted that she argued with the Victim on the eve of his death, threatened him via text message, fired a shot at him as he was walking away from her vehicle, and drove away without attempting to provide or obtain medical treatment for him. *See, e.g., Myers*, 2013 WL 1094981, at *2, *8.

Further, Petitioner cannot rely on any ineffective assistance of post-conviction counsel as cause to excuse the procedural default in this case. *See Martinez v. Ryan*, 566 U.S. 1, 16 (2012) (holding that the ineffective assistance of post-conviction counsel may, under limited circumstances, qualify as cause to excuse the procedural default of ineffective assistance-of-trial counsel claims); *Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014) (applying *Martinez* in Tennessee). When reviewing a procedurally defaulted claim of ineffective assistance of trial counsel under *Martinez*, the Sixth Circuit has instructed:

> [T]he district court should determine . . . (1) whether state post-conviction counsel was ineffective, and (2) whether [Petitioner]'s claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez, Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of h[er] claims, the district court should evaluate such claims on the merits. Under this framework, which is consistent with Supreme Court precedent and our holding in *Sutton,* [Petitioner] has a long way to go before the district court could even evaluate the merits of h[er] claims. Moreover, even "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal

13

court to consider the merits of a claim that otherwise would have been procedurally defaulted."

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (internal citations omitted). Under the *Martinez* framework, a claim is substantial if the petitioner can demonstrate that it has "some merit" under the standards governing claims of ineffective assistance. *Hill v. Mitchell*, 842 F.3d 910, 938 (6th Cir. 2016).

### 1. Failure to Protect Plaintiff's Rights in Plea Negotiations

In her federal habeas petition, Petitioner states only that trial counsel "fail[ed] to protect the Petitioner's rights during plea negotiations" [Doc. 2 at 5]. Out of an abundance of caution, the Court considers Petitioner's federal habeas claim to encompass each of the ineffective assistance of counsel claims regarding plea negotiations raised at the trial court and appellate levels of Petitioner's post-conviction proceedings [*Compare* Doc. 15-16 at 10 (TCCA Technical Record, Vol. I), *with* Doc. 15-26 at 16-18 (TCCA Brief of Appellant)].

#### i. Counsel's Failure to "Enforce" the Plea

Petitioner's claim that counsel rendered ineffective assistance in failing to protect the signed plea agreement under contract law was not raised in Petitioner's post-conviction petition [*See* Doc. 15-17 at 95-96 (TCCA Technical Record, Vol. II)]. Instead, Petitioner raised this claim for the first time on appeal [*See* Doc. 15-26 (TCCA Brief of Appellant)]. It is well established under Tennessee law that issued not raised in the post-conviction petition cannot be raised for the first time on appeal. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). The TCCA unequivocally imposed this bar and refused to address the merits of this claim. *Myers II*, 2021 WL 2395962, at *2.

Accordingly, the Court concludes that this claim is procedurally barred pursuant to the TCCA's application of Tennessee's firmly established and regularly applied waiver rule, which is

14

independent of the federal question and adequate to support the judgment. *See Coleman*, 501 U.S. at 729-30 (holding courts may "not review a question of federal law decided by a state court if the decision of that court rests on a state ground that is independent of the federal question and adequate to support the judgment"); *see also Cone v. Bell*, 243 F.3d 961, 970 (6th Cir. 2001), *overruled on other grounds by Bell v. Cone*, 535 U.S. 685 (2002) (finding Tennessee's waiver statute to be "independent" and "adequate" state rule); *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (holding state law must be "firmly established and regularly followed" for purposes of procedural default).

Further, Petitioner has not demonstrated that she took any detrimental action in reliance on the agreement, and this claim is not otherwise substantial under *Martinez*. *See Martinez*, 566 U.S. at 16. Therefore, this claim is procedurally default and is barred from a merits review.

### ii. Counsel's Plea Advice

In her initial pro se post-conviction petition, Petitioner argued that trial counsel rendered ineffective assistance by advising her not to take a twenty-year (20-year) plea offer [Doc. 15-15 at 10 (Order of the Tennessee Supreme Court)]. However, she did not carry this claim forward in her post-conviction appeal [Doc. 15-26 (TCCA Brief of Appellant)]. By failing to present this claim to the TCCA, Petitioner failed to exhaust the claim. 28 U.S.C. § 2254(b)(1); *see also* Tenn. S. Ct. R. 39. But given Tennessee's statute of limitations and prohibition against successive petitions, there are no further State remedies available to Petitioner. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Therefore, this claim is technically exhausted and procedurally defaulted. *See, e.g., Jones*, 696 F.3d at 483.

Petitioner cannot claim ineffective assistance of counsel at the post-conviction appeal stage to excuse this default. *Martinez* explicitly held that the narrow exception the opinion carved out "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a

15

prisoner to raise a claim of ineffective assistance at trial[.]" *Martinez*, 566 U.S. at 16 (noting that *Coleman* "held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial"). Therefore, the *Martinez* exception does not apply to claims that were raised at the initial post-conviction proceeding but not carried forward on post-conviction appeal. *See, e.g., West v. Carpenter*, 790 F.3d 693, 698-99 (6th Cir. 2015) (holding that "attorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework").

And even if *Martinez* applies, Petitioner has not demonstrated that her claim that trial counsel rendered ineffective assistance regarding the twenty-year plea offer is substantial. The post-conviction trial court found Petitioner's testimony regarding trial counsel's advice unreliable, and instead credited trial counsel's testimony that he never promised Petitioner a more favorable outcome than a twenty-year (20-year) sentence [Doc. 15-17 at 90 (TCCA Technical Record, Vol. II)]. This Court presumes that the State court's determinations of factual issues, including its credibility assessments, are correct unless that presumption is rebutted by clear and convincing evidence. *See Mitchell v. Mason*, 325 F.3d 732,737-38 (6th Cir. 2003) (citation and quotation marks omitted); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2001). Petitioner has not identified any evidence to rebut the State court's finding, and thus, the Court concludes that the TCCA's credibility determinations were not unreasonable. Accordingly, Petitioner's claim of ineffective assistance of counsel in plea negotiations is procedurally defaulted.

### 2. Failure to Request a Change of Venue

Petitioner asserts a claim of ineffective assistance of trial counsel based on trial counsel's failure to request a change of venue [Doc. 2 at 5]. Petitioner presented this claim in her initial pro se post-conviction petition, but she did not carry it forward on appeal [*Compare* Doc. 15-15 at 9-10

16

(Order of the Tennessee Supreme Court), *with* Doc. 15-26 (TCCA Brief of Appellant to TCCA)]. Because Petitioner failed to present this claim to the TCCA, Petitioner failed to exhaust it. *See* 28 U.S.C. § 2254(b)(1); *see also* Tenn. S. Ct. R. 39. Given Tennessee's statute of limitations and prohibition against successive petitions, there are no longer State remedies available to Petitioner. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Therefore, this claim is technically exhausted and procedurally defaulted. *See, e.g., Jones*, 696 F.3d at 483.

Petitioner presented this claim in her pro se petition for post-conviction relief [Doc. 15-16 at 9-10 (TCCA Technical Record, Vol. I)]. However, at the post-conviction hearing, counsel stated Petitioner would not be addressing the venue issue at the hearing [Doc. 15-18 at 7 (Post-Conviction Petition Hearing Transcript at 4)]. To the extent that this may be interpreted as a waiver of the issue (as opposed to a decision not to present proof on the issue), the procedural default could be attributed to post-conviction counsel. Accordingly, the Court will consider whether the *Martinez* exception could save this claim from procedural default.

The record demonstrates that post-conviction counsel decided to forgo argument or proof on this issue after discussion with his client, and Petitioner has not demonstrated that counsel performed deficiently in failing to pursue the issue. Petitioner has not identified any evidence of prejudicial pretrial publicity, bias in the record of the jury venire, or other grounds to indicate that she suffered prejudice because of counsel's failure to pursue this issue. *See Fields v. Holloway*, No. 2:17-cv-115-RLJ-CRW, 2020 WL 5791745, *9 (E.D. Tenn. Sept. 28, 2020) (finding counsel not ineffective for failing to request a change in venue "absent a showing of prejudice") (citations omitted); *McCurry v. Mills*, No. 3:06-cv-332, 2009 WL 2849787, *12 (E.D. Tenn., Aug. 31, 2009) (holding that counsel was not ineffective for failing to request a change of venue where the "parties were able to seat a jury who swore on their oath that they could try the case fairly"); *Holt v. Carlton*,

No. 2:06-cv-247, 2008 WL 687509, *8 (E.D. Tenn. Mar. 12, 2008) (holding that counsel was not ineffective when Petitioner offered no evidence of prejudice related to counsel's decision not to seek a change in venue).  Likewise, Petitioner has not identified any evidence suggesting that this claim is substantial within the meaning of *Martinez*.  *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation and internal quotation marks omitted).  Accordingly, the *Martinez* exception is inapplicable, and this Court is precluded from reaching the merits of this claim.

### 3.     Failure to Provide Accurate Sentencing Information

Petitioner next maintains that counsel rendered ineffective assistance of counsel by (1) erroneously advising her that she would not serve more than a twenty-year (20-year) sentence if she was convicted of second-degree murder and (2) failing to advise her about the sentencing ranges applicable to first-degree murder [*See* Doc. 2 at 5-6].

It does not appear that Petitioner presented the State courts with a claim that trial counsel rendered erroneous advice regarding second-degree murder.  Accordingly, Petitioner has not exhausted her State-court remedies with regard to this issue.  *See* 28 U.S.C. § 2254(b)(1); *see also* Tenn. S. Ct. R. 39.  And because of Tennessee's statute of limitations and prohibition against successive petitions, there are no longer State remedies available to Petitioner.  *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).  Therefore, this claim is technically exhausted and procedurally defaulted.  *See, e.g., Jones*, 696 F.3d at 483.

Petitioner offers no explanation for the default of this claim, and she does not explain how trial counsel's alleged misapprehension of her sentencing exposure for second-degree murder was prejudicial.  During her post-conviction evidentiary hearing, however, Petitioner claimed that she

rejected the plea offer of second-degree murder with twenty (20) years' imprisonment because trial counsel told her that she would not serve more than twenty (20) years if convicted of second-degree murder [*See* Doc. 15-18 p. 10, 14]. But the post-conviction trial court did not credit Petitioner's testimony regarding trial counsel's advice to her, and Petitioner has not demonstrated that the court's credibility determinations were unreasonable. Accordingly, this claim is insubstantial under *Martinez* and barred from a merits review.

Further, in post-conviction proceedings in the trial court, Petitioner alleged that trial counsel failed to advise her as to her sentencing exposure for first-degree murder [Doc. 15-16 at 80 (TCCA Technical Record, Vol. I)]. However, this claim was not carried forward on post-conviction appeal, and, therefore, the *Martinez* exception is inapplicable to overcome the procedural default. *See West*, 790 F.3d at 698-99. Accordingly, this claim is likewise procedurally defaulted, and the Court may not reach the merits of this claim.

### B. Judicial Misconduct

In the body of her habeas petition, Petitioner also alleges judicial misconduct when the trial judge "made several comments which were supposed to assist the jurors with feeling 'at ease'" but that served to "negate[] the seriousness" of the trial and the consequences to Petitioner [Doc. 2 at 5]. Specifically, during voir dire, a potential juror expressed concern about the trial proceeding to Friday [Doc. 15-17 at 41 (TCCA Technical Record, Vol. II)]. The transcript reads:

> [ADA]: I don't think you'll be here on Friday. We've got a lot of other work to do on Friday.
>
> Court: We've got 55 things set for Friday already. If they run this one into that I'm going to be upset.
>
> (Laughter).

[*Id*. at 41 (TCCA Technical Record, Vol. II)].

Petitioner presented a claim of judicial misconduct in her amended petition for post-conviction relief [Doc. 15-16 at 80 (TCCA Technical Record, Vol. I)], but she did not carry that claim forward on appeal to the TCCA. Because of Tennessee's statute of limitations and prohibition against successive petitions, there are no longer State remedies available to Petitioner. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Therefore, this claim is technically exhausted and procedurally defaulted. *See, e.g., Jones*, 696 F.3d at 483.

To the extent Petitioner relies upon *Martinez* to establish cause for her default, it is inapplicable here because the underlying claim is an alleged failure of the State court, not a claim of ineffective assistance of trial counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) (reiterating that *Martinez* does not extend beyond claims of ineffective assistance of trial counsel); *see also Abdur-Rahman v. Carpenter*, 805 F.3d 710, 714, 716 (6th Cir. 2015) (declining to apply *Martinez* to claims of suppressed evidence, prosecutorial misconduct, trial error, ineffective assistance of appellate counsel, and cumulative error). Therefore, this claim is procedurally barred, and the Court is prohibited from considering its merits.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before she may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, the Court will **DENY** her petition for a writ of habeas corpus and **DISMISS** this action **WITH PREJUDICE**. The Court will **DENY** a certificate of appealability. Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

21